O. C. BERRY *v.* CAROLINA, CLINCHFIELD & OHIO RAILWAY.

(Filed 24 May, 1911.)

1. **Railroads—Pleadings—Cause of Action—Passengers—Assault—Ejection from Train.**

   A complaint sufficiently alleges a cause of action against a railroad company which sets forth that the plaintiff was a passenger on defendant's train, and while riding as a passenger defendant's agents wilfully, maliciously and in utter disregard of his rights assaulted him and wrongfully ejected him from the car and caused him to be arrested upon a criminal charge, for which he had been acquitted before the commmencement of his civil action.

2. **Railroads—Passengers—Assault—Ejection—False Arrest—Continuous Tort.**

   Allegations of the complaint that the defendant railroad company, through its agent, assaulted the plaintiff without provocation, wrongfully and maliciously ejected him, while rightfully a passenger, from its train, caused his arrest and trial for a crime of which he has since been acquitted before the bringing of the present suit, avers a series of acts constituting one continuous tort, for which the defendant is liable. *Minter v. Express Co.,* 153 N. C., 507; *Daniel v. R. R.,* 136 N. C., 517, cited and distinguished.

3. **Principal and Agent—Corporations—Respondeat Superior.**

   Corporations are liable for the acts of their agents while engaged in the business of their principals in the same manner and to the same extent that individuals are liable under like circumstances.

4. **Railroads—Passengers—Ejecting from Train—Anticipated Consequences.**

   A conductor on a passenger train is not obliged to wait until a passenger thereon has committed an act of violence before ejecting him from the train, for he may anticipate violent and offensive conduct when the condition of the passenger is such as to indicate that he will become offensive to other passengers.

5. **Railroads — Principal and Agent—Passengers—Torts—Wrongful Ejecting—Evidence of Agency—Conductors.**

   Defendant railroad's traveling passenger agent was on an excursion train assisting the conductor in his duties of collecting fares, etc., and by his bearing and other circumstances evincing his authority over the conductor. *Held,* sufficient evidence to go

to the jury of the scope of his agency to bind his principal, the railroad company, by his acts in wrongfully and maliciously causing a passenger to be assaulted and ejected from the train,. and the passenger's immediate arrest and trial for a criminal offense.

APPEAL from *Lane, J.,* at the January Term, 1911, of McDOWELL.

Civil action to recover damages for an alleged tort.

1. Was the plaintiff arrested and prosecuted as alleged in the complaint? Answer: Yes.

2. Was the same without probable cause? Answer: Yes.

3. Was the same done with malice? Answer: Yes.

4. Was the act of the agent of the defendant company, as alleged in the complaint, done wilfully or wantonly or in utter disregard of the rights of the plaintiff? Answer: Yes.

5. Has the criminal action terminated? Answer: Yes.

6. What damage, if any, has plaintiff sustained thereby? Answer: $850.

From the judgment rendered the defendant appealed.

*John Gary Evans, Pless & Winborne for plaintiff.*
*J. Norment Powell and James J. McLaughlin for defendant.*

BROWN, J. The defendant assigns as error:

1. Overruling defendant's demurrer *ore tenus* to the complaint.

2. Overruling defendant's motion to nonsuit at the close of the evidence.

We are of opinion that the demurrer was properly overruled. The complaint alleges "that at or near the station of Marion, in the State of North Carolina, while plaintiff was riding peaceably as a passenger on said train, the agents of the defendants wilfully, wantonly, carelessly, maliciously, negligently and in utter disregard of the rights of the plaintiff, assaulted the plaintiff and committed a battery upon his person, and with violence and a strong arm ejected the plaintiff from its car, where he had a right to be, and caused the plaintiff to be arrested and charged as a criminal before a justice of the peace in the State of North Carolina."

The complaint further avers that the plaintiff was discharged and that the prosecution has terminated.

It requires no citation of authority to prove that a cause of action is stated by those words, and one for which, if sustained, the plaintiff may recover damages.

The complaint not only alleges the wrongful ejection of plaintiff, a passenger, from defendant's train, but that it was done wilfully, wantonly and in utter disregard of plaintiff's rights. *Holmes v. R. R.,* 94 N. C., 324.

The error of the learned counsel for defendant is in regarding this as an action for a prosecution solely for a supposed past offense, as was the case in *Minter v. So. Express Co.,* 153 N. C., 507, and *Daniel v. R. R.,* 136 N. C., 517.

In the former case the complaint charged that the defendant's night watchman swore out a warrant against the plaintiff for the larceny of whiskey from the express company. The complaint was held to be demurrable, in the absence of an allegation that the express company authorized or ratified the act of the night watchman, the act charged not being within the general scope of his authority.

In the latter case the cashier in the local office of a railroad company caused the arrest of a person whom he suspected of having stolen money from the office of the company. In the absence of proof that the act of the cashier was authorized or ratified by the corporation, it was held that the plaintiff could not recover.

The difference between those cases and the one at bar is obvious. In the two former the sole purpose was to punish the offender for a past unlawful act upon his part and thus to vindicate justice.

That was no part of the agent's business and did not come within even an implied authority, much less the actual scope of his agency.

"There is no implied authority in a person having the custody of property to take such steps as he thinks fit to punish a person who he supposes has done something with reference to the property which he has not done. The act of punishing the offender

155—19

is not anything done with reference to the property; it is done merely for the purpose of vindicating justice. And in this respect there is no difference between a railway company, which is a corporation, and a private individual." *Allen v. R. R.,* L. R. 6, Q. B. 65, quoted in *Daniels v. R. R., supra.*

In this case we have a very different state of facts stated in the complaint and admitted by demurrer.

The tort consists, not in prosecuting the plaintiff for a past offense for the purpose of vindicating justice, but in having him illegally arrested while a passenger on defendant's train and entitled to its protection, taken from the car and delivered into custody, all of which is alleged to have been done by and at the instance of defendant's agent. The series of acts constituted one continued tort, for which the defendant is responsible.

It is well settled that corporations are liable for the acts of their servants while such servants are engaged in the business of their principals, in the same manner and to the same extent that individuals are liable under like circumstances. *Bank v. Graham,* 100 U. S., 699.

As to whether the arrest and ejection of the plaintiff was actually within the scope of Mandell's authority can best be considered in passing on the motion to nonsuit, as the agency is alleged and of course admitted by demurrer.

We are of opinion that the motion to nonsuit was properly overruled. The entire evidence was introduced by the plaintiff, the defendant offering none, and tends to prove these facts:

There was an excursion train operated on 28 December, 1909, from Spartanburg, S. C., beyond Spruce Pine, N. C., on defendant's road. Plaintiff, being a passenger thereon, was arrested in this State by two police officers of Spartanburg, who were on the train, at the direction and command of Charles T. Mandell, the traveling passenger agent of the defendant, removed from the train and delivered into the custody of a constable and a justice of the peace at Spruce Pine, when a warrant was issued at the instance of Mandell.

The plaintiff was taken under arrest to Marion, in McDowell County, Mandell accompanying the officer, and tried by a justice of the peace and discharged. The evidence shows that Mandell

prosecuted the case and insisted on plaintiff being imprisoned without bail. The motion to nonsuit brings up two inquiries: Was the plaintiff wrongfully arrested, removed from the train and prosecuted? If so, is the defendant liable for Mandell's acts?

That a passenger may forfeit his rights as such by his misconduct, and that he may be lawfully ejected from the train on that account by the carrier, is undeniable. The conductor is responsible for his train, and it is not only his right, but it is his duty to eject a drunken or disorderly passenger.

In doing this the conductor is necessarily bound to act upon appearances, and all that the law requires is that he shall use reasonable care and caution not to make a mistake.

The conductor is not obliged to wait until some act of violence has been committed by the passenger before exerting his authority. He may anticipate violent and offensive conduct when the condition of the passenger is such as to indicate that he will become offensive to other passengers. 2 Hutchinson on Carriers (3d Ed.), sec. 978.

The answer avers that the plaintiff was arrested in his car because of his violent threats and participation in an affray on the train, which resulted in the serious wounding of one of the participants.

While there is evidence of a fight in one of the cars, there is no evidence that the plaintiff participated in it. We find nothing whatever in the record which justifies or even excuses the arrest and prosecution of the plaintiff. From the plaintiff's evidence and the other testimony offered by him it is manifest that Mandell (who was not examined) acted with precipitation, violence and an entire disregard of plaintiff's rights.

In fact, it is not contended in defendant's brief or upon the argument that the arrest, expulsion and prosecution of plaintiff is justified by any evidence in the record, but defendant's counsel rest their defense exclusively upon the contention that the defendant is not liable for Mandell's acts.

We are of opinion that such contention cannot be sustained.

The evidence discloses that this was a large excursion train, carrying many passengers; that Mandell, admitted to be the

traveling passenger agent of defendant, was on the train; that he was assisting the conductor to manage the train, which evidently needed more than one person to conduct it properly.

The attitude of the conductor and all on the train towards Mandell shows that his authority was supreme and extended throughout the train.

As Mandell, the passenger agent of defendant, was assuming this authority openly on the train, it must be presumed to have been within the scope of his temporary authority and with defendant's consent, especially when the defendant offers no evidence to the contrary.

When Mandell ordered the arrest and expulsion of defendant from the train, and followed it up by delivering plaintiff into the custody of the law and prosecuting him, he committed a tort for which the defendant is liable.

The prosecution was not for a past offense which plaintiff had committed, as in the cases we have quoted, but it was a continuation of the same tort committed by Mandell when he ordered the arrest on the train.

As he had the legal authority to order the arrest of plaintiff upon proper provocation, the act was within the scope of his general authority, and if he exercised such authority wrongfully, wantonly and with utter disregard of plaintiff's rights, as is alleged in the complaint and found by the jury, the defendant is liable for his conduct.

The act was committed in the course of Mandell's employment at the time, in furtherance of the defendant's business, and was apparently within the scope of his authority. The principle laid down in the *Daniels* and *Minter cases* has no application to the facts of this case. It falls rather within the principle laid down in *Jackson v. Telegraph Co.,* 139 N. C., 354; *Marlowe v. Bland,* 154 N. C., 140; *Hussey v. R. R.,* 98 N. C., 34; *R. R. v. Harris,* 122 U. S., 597.

No Error.