FRED ROBINSON v. SEARS, ROEBUCK & COMPANY ET AL.

(Filed 18 October, 1939.)

**Principal and Agent § 10a—Evidence held to disclose that assault by store employee on customer was personal and not in course of employment.**

The evidence tended to show that plaintiff, a customer in the corporate defendant's store, remonstrated with an employee in regard to language used by such employee to girls employed in the store, that the employee thereupon invited plaintiff out the back door and assaulted him. *Held:* The evidence discloses that the assault was purely personal and unconnected with the employer's business and the corporate defendant's motion to nonsuit was properly sustained, the doctrine of *respondeat superior* applying only when the relationship of master and servant is shown to exist at the time of, and in respect to the particular wrongful act of the employee complained of.

SEAWELL, J., dissenting.

APPEAL by plaintiff from *Rousseau, J.,* at July Term, 1939, of BUNCOMBE.

Civil action to recover damages for personal injuries alleged to have been sustained by reason of the willful wrong or negligent act of the defendant.

The facts are these: On Saturday evening, 10 September, 1938, just after dark, the plaintiff went to the store of the corporate defendant in Asheville to pay a bill. Max Lewis was in the store at the time in the discharge of his duties as an employee of the corporate defendant. While the young lady in the office was receiving plaintiff's payment, the defendant Max Lewis called to her from the main floor, "Don't be so damned slow." Whereupon she remarked to the plaintiff: "That's the contrariest, hatefulest fellow I have ever seen."

After paying his bill and obtaining receipt therefor, the plaintiff started down the steps from the office to the main floor, and near the foot of the steps he met Max Lewis, who remarked to him, "That is the damnest slowest bunch of girls I have ever seen." The plaintiff replied, "You are no gentleman or you wouldn't talk to them that way." His retort was, "I will do you worse than that." He turned around and said, "Come this way." The two went out the back door and engaged in a fist fight near an alleyway. Plaintiff sues to recover for the injuries sustained in the fight.

On cross-examination the plaintiff stated that the conversation which he had with Lewis was not about the business of the corporate defendant: "It was about a personal matter between me and Lewis. . . .

I just didn't think he was a gentleman or he wouldn't talk to them like that. I thought it was my place to tell him and that is what I told him."

From judgment of nonsuit as to the corporate defendant, the plaintiff appealed to the Superior Court of Buncombe County where the judgment of the general county court was affirmed.

Plaintiff again appeals, assigning error.

*Don C. Young for plaintiff, appellant.*
*Harkins, Van Winkle & Walton for defendant, appellee.*

STACY, C. J. When the plaintiff went out of his way to reprimand the individual defendant for his manner of speech or his intemperate language about the girls in the store, he fell under the proverbial comparison of "He that passeth by, and meddleth with strife belonging not to him, is like one that taketh a dog by the ears." Prov. 26:17. The plaintiff was under no legal duty to reprove the defendant Lewis, however strongly he may have been inclined to do so. His business with the corporate defendant had ended, and he concedes "the fight was over a personal matter." This brings the case within the principle of *Snow v. DeButts,* 212 N. C., 120, 193 S. E., 224, where the motion to nonsuit was sustained, and distinguishes it from *Munick v. Durham,* 181 N. C., 188, 106 S. E., 665, cited and relied upon by plaintiff. *Cf. Long v. Eagle Store Co.,* 214 N. C., 146, 198 S. E., 573; *Robinson v. McAlhaney, ibid.,* 180, 198 S. E., 647; *Dickerson v. Refining Co.,* 201 N. C., 90, 159 S. E., 446.

The authorities are to the effect that where an assault by an employee is purely personal, having no connection with the employer's business but a merely accidental or incidental one, the doctrine of *respondeat superior* is inapplicable and cannot be successfully invoked to support a recovery against the employer. *Parrish v. Mfg. Co.,* 211 N. C., 7, 188 S. E., 817; *Linville v. Nissen,* 162 N. C., 95, 77 S. E., 1096; *Bucken v. R. R.,* 157 N. C., 443, 73 S. E., 137; *Dover v. Mfg. Co., ibid.,* 324, 72 S. E., 1067; Annotations: 40 A. L. R., 1212; 114 A. L. R., 1033.

"Where one person is sought to be charged with the negligence or wrongdoing of another, the doctrine of *respondeat superior* applies only when the relation of master and servant is shown to exist between the wrongdoer and the person so sought to be charged, at the time of and in respect to the very transaction out of which the injury arose. The fact that the former was at the time in the general employment and pay of the latter, does not necessarily make the latter chargeable." *Wyllie v. Palmer,* 137 N. Y., 248.

ROBINSON *v.* SEARS, ROEBUCK & CO. ·

The foregoing was quoted with approval in *Bright v. Tel. Co.,* 213 N. C., 208, 195 S. E., 391; *Liverman v. Cline,* 212 N. C., 43, 192 S. E., 489; *Linville v. Nissen, supra; Van Landingham v. Sewing Machine Co.,* 207 N. C., 355, 177 S. E., 754, and is universally held for law. *Doran v. Thomsen,* 76 N. J. L., 754. See *Tribble v. Swinson,* 213 N. C., 550, 196 S. E., 820; *Cole v. Funeral Home,* 207 N. C., 271, 176 S. E., 553; *Martin v. Bus Line,* 197 N. C., 720, 150 S. E., 501; *Wilkie v. Stancil,* 196 N. C., 794, 147 S. E., 296; *Grier v. Grier,* 192 N. C., 760, 135 S. E., 852.

It results that the motion to nonsuit was properly sustained.

Affirmed.

SEAWELL, J., dissenting: On the abstract proposition that the principle *respondeat superior* does not apply where in his sin of commission or omission the peccant 'servant was not about his master's business, I have seen many opinions *pro* and none that I recall *contra.* Thus far, the thing seems to me rather self-evident and the statement very general —too general, I think, to dispose of the more serious question presented in the case at bar, which I may be permitted to formulate as follows: Does the owner and keeper of a store owe to invited customers, who come upon the premises to transact business, the duty of reasonable protection while there? If the assault made by defendant's manager upon the plaintiff was contrary to such a duty—resting alike on the defendant owner and on his employees, including the assailant manager —the doctrine of *respondeat superior* is again enthroned.

This Court has in the past answered our question, inferentially at least, in the affirmative. *Munick v. Durham,* 181 N. C., 188, 195, 106 S. E., 665; *Seawell v. R. R.,* 132 N. C., 856, 44 S. E., 610. And for this there is abundant outside authority: See cases cited in *Munick v. Durham, supra.*

There is no reason why this salutary principle should be confined to railroad companies or municipalities, unless it is on the theory that the larger the corporation the more soulless it becomes. In this connection we should remember that some great mercantile companies probably come into contact with more persons daily than the average railroad and ·have at least equal opportunities for petty oppression. Also, the sound judgment, wisdom, and tact of leaders who have built up and control these commendable enterprises may be at such a distance from these public contacts as to make the operation equally impersonal as to them.

Approaching the subject on one line, in negligence cases we find that the owner of premises owes an invitee the duty of reasonable protection against dangerous conditions. *Clark v. Drug Co.,* 204 N. C., 628, 169 S. E., 217; *Jones v. R. R.,* 199 N. C., 1, 153 S. E., 637; *Ellington v.*

*Ricks,* 179 N. C., 686, 102 S. E., 510. Converging upon our objective along another line, we find that certainly the duty of reasonable protection to an invitee upon the premises is extended to railroad corporations and to municipalities. If both lines are cut and stopped here, the doctrine stands out frustrated, incomplete, wanting in symmetry, like a truncated cone; and the principle, as the courts continue to apply it, discriminatory and invidious. In justice there can be no closed category of corporations to which the principle may be confined.

If this be established, I think the Court, as a court of law, has carried the burden of adjustment to its jurisdictional limit, and there should turn it over to the jury. I cannot see how it is competent for us to pass upon the amenities which the gentlemen involved in the crucial transaction owed each other in the diplomatic stages preceding active hostilities, nor do I see how it pertains to the functions of this Court either to believe or disbelieve the plaintiff when he testifies that he understood the store manager merely to be showing him a shorter way out when he led him into a dimly lighted room and assaulted him. *Dickerson v. Reynolds,* 205 N. C., 770, 772, 172 S. E., 402; *Lewis v. Basketeria Stores, Inc.,* 201 N. C., 849, 161 S. E., 924; *Stevens v. Rostan,* 196 N. C., 314, 145 S. E., 555; *Smith v. Safety Coach Line,* 191 N. C., 589, 132 S. E., 567.

The evidence, taken in the light most favorable to the plaintiff, calls for consideration by the jury. *Newbern v. Leary,* 215 N. C., 134; *Reid v. Coach Co.,* 215 N. C., 469; *Fox v. Army Store,* 215 N. C., 187, 190. However much sporadic verdicts may disturb our faith—they are never epidemic—after all, trial by a jury is an old English custom, rating honorable mention in the Constitution.